No. 20331.

Allen J. Lefferdink, trustee of the Colorado
Insurance Group Employees' Pension Fund, etc., *v.*
Richard D. Baker, et al.
(399 P.2d 935)

Decided March 15, 1965.

458

George F. Barbary, Thomas L. Combs, for plaintiffs in error.

Thomas D. Smart, Stanley A. Black, for defendants in error.

*En Banc.*

Mr. Justice Moore delivered the opinion of the Court.

This cause is here on writ of error to review a final judgment entered by the trial court in two civil actions which were consolidated for trial. Following trial to the court a judgment was entered against the defendant, who is plaintiff in error, for $206,453.25 actual damages, $25,000.00 exemplary damages, and execution against the body of defendant.

The lengthy record and the numerous exhibits contain much that is irrelevant to a determination of the legal

rights of the litigants under issues framed by the pleadings. The voluminous record has nevertheless been carefully scrutinized and the relatively small amount of "wheat" has been separated from the abundance of "chaff." We conclude that the issues of law and fact which are proper for consideration are relatively simple.

We first consider the issues as framed by the pleadings in the two cases above mentioned. The first complaint filed October 3, 1960, was numbered 14919 in the trial court. It was filed by five named plaintiffs against Allen J. Lefferdink, *Trustee*, and alleged that plaintiffs had contributed to "The Colorado Insurance Group Retirement Plan," of which defendant was remaining trustee, and that under the plan, and by virtue of their separation from employment, the five plaintiffs were entitled to the sum of $2,130.46 for which money demand judgment was prayed. Thereafter, and on July 31st, 1961, pursuant to court permission the five plaintiffs filed their amended complaint adding, "On behalf of all others similarly situated" to the caption, and alleging a class action. They then alleged that as a class they were employees from whose earnings money had been withheld and placed in the Trust Fund; and that since they had all terminated their employment and had not been paid their termination refunds, they were entitled to payment from the fund in the amount of $1,742.61.

The second case was filed December 15, 1960, and was numbered 15051. The complaint was filed by six named plaintiffs "On their own behalf and on behalf of all others similarly situated." It was filed against Allen J. Lefferdink, *individually*, and against two bonding companies, who were later dismissed as parties to the action. The plaintiffs alleged that they and all members of their class (former employees of specified Lefferdink companies) had contributed to the Trust, and that the trustees were wholly denominated and controlled by the individual defendant; they further alleged that the individual defendant converted to his own use and benefit

$139,365.57 from the trust fund "owned by and an asset of the said Colorado Insurance Group Employees' Retirement Plan." These plaintiffs alleged that the conduct of defendant having been fraudulent, willful and wanton, they were entitled to exemplary damages in the sum of $100,000, and to execution against the body of the defendant "for any such exemplary damages not paid." In their second, third, and fourth claims against the defendant, individually, these plaintiffs alleged "breaches of trust" by misuse or transfer of trust assets, and requested an "accounting" for $139,365.57.

We point up the fact that the plaintiffs in each of the actions were all employees of some one of the nine corporations who had joined in the creation of "The Colorado Insurance Group Employees' Retirement Plan." This entity was controlled by trustees, Employees of the nine corporations made contributions to the trust fund created by the "plan." These contributions were deducted from salaries payable to the employees, and the corporation employers also made contributions to said trust fund for the purpose of providing benefits to the employees, all as specifically mentioned in the "plan." We will hereinafter make specific reference to pertinent sections of this indenture upon which plaintiffs must necessarily rest their claims. None of the employer corporations was made a party to either of the actions in the trial court.

The substance of plaintiffs' pleadings, as finally submitted to the trial court, was as follows:

1. The allegations of the original first-filed complaint, a money demand for $2130.46, were not altered;

2. The caption of the original first-filed complaint was amended to include all other similarly situated employees who had not received termination refunds, and the amount of money prayed for was increased;

3. The second action resulted in another claim filed on behalf of persons included in the same "class" as that involved in the first action.

4. The second action alleged tort rather than contract

and requested punitive damages; this prayer was amended to increase the asserted damages for diversion of the assets of the Trust to $333,000, plus body judgment on the unpaid exemplary damages;

5. In addition to praying for money damages, the plaintiffs' pleadings also insisted that the Receiver continue holding all right, title and interest to all the assets of the Trust, and solely on behalf of the plaintiff employees;

6. The defendant in the first-filed action was still Allen J. Lefferdink, "trustee"; the defendant in the second-filed action was still Allen J. Lefferdink, "individually";

7. The employer corporations still had not been joined as parties.

The substance of the defendants' pleadings, as finally submitted to the trial court, was as follows:

1. Denied any liability or responsibility of Allen J. Lefferdink either as trustee or as an individual;

2. Admitted that plaintiffs in the first-filed action (separated employees who had not received termination refunds) had coming to them from the Trust termination refunds totalling $22,918.90, payable in eight future installments;

3. Denied that any of the plaintiffs had any right, title or interest in the Trust or the Trust res except termination refunds;

4. Alleged that plaintiffs in the second-filed action, who were not already part of the class of the first-filed action, had already received termination refunds and thus had no further claim to anything;

5. Alleged that after payment of the balance of the termination refunds to plaintiffs in the first-filed action, the Trust res belonged to the employer corporations who were not parties to the present litigations;

6. Requested that defendant be released from trustee responsibility and that the receivership of the Trust be continued for the benefit of both employees and employers.

Pertinent provisions of the "plan" by which the parties to this action are bound, and which place definite limitations upon the interest of any employee in the Trust Funds are as follows:

"*SECTION 6.01.* If any participant terminates his employment with an Employer for any reason other than death, retirement or Total Disability, he shall be entitled to receive an amount equal to the sum of the following:

"(1) The full amount of his contributions to the Fund plus 2% interest compounded annually; * * * *Said payment shall be in full and final satisfaction of any and all claims and rights of such Participant in the Fund.*" (Emphasis supplied.)

It is admitted that all of the plaintiffs terminated their employment for reasons "other than death, retirement or Total Disability." Under the above quoted section any plaintiff who had terminated his employment for reasons "other than death, retirement or Total Disability," and who had accepted payment of "The full amount of his contributions to the Fund plus 2% interest compounded annually," had no further legal claim against a trustee of the Fund. No conduct of any trustee relating to the trust fund could thereafter give rise to any claim for damages allegedly sustained by such employee, and he could not enforce any claim against a trustee as a representative of a "class" similarly situated.

Those plaintiffs who had terminated their employment for reasons "other than death, retirement or Total Disability," and who had not received a refund of the amount of their contributions to the Trust Fund plus 2% interest, were entitled to receive such refund plus interest. Beyond this amount, however, no trustee of the Fund could be held liable to any employee. The latter could not suffer damage in excess of the maximum amount he was entitled to recover under the express terms of the indenture.

The undisputed evidence is that the total amount due

the employees who had not been paid the full termination of employment benefits was the sum of $22,918.90 (not including $8,990.26 owed to the defendant as an employee and crediting the sum of $5,546.75 which was deposited into the court registry for the benefit of plaintiffs, pursuant to court order.) Thus the maximum claim of all the plaintiffs in the consolidated cases, insofar as actual damages are concerned, is the sum of $22,918.90 and no judgment for actual damages in excess of that amount could be sustained in any event. The trust instrument itself fixed the limits of the interest of the employees in the Fund.

 The interest of the employees in the Trust Fund is not increased or expanded by reason of the fact that the trust indenture did not expressly make provision for disposition of trust assets which might remain after refunds to employees had been made as stipulated in the "plan." It is well established law that where an express trust is created, every asset thereof which is not disposed of in the due performance of the trust reverts to the creators of the trust in the event it ceases to function. 90 C.J.S. Trusts § 201; Restatement — Trusts § 430. In the instant case the nine employer corporations were the creators of the trust. If damage in excess of the refunds due the employees was in fact sustained by anyone, it was sustained by the nine corporations. Not one of them is a party to the action. Not one of them complains that damage or loss was sustained by reason of any conduct of Lefferdink acting individually or as trustee of the Fund.

During the course of the proceedings in the trial court, on September 29, 1961, a receiver was appointed to take over the assets of the "Plan," and thereafter the remaining assets and the books and records of the Trust were placed in his possession. We note that at the time the last employees were discharged by one of the employer corporations, between 70% and 80% of the total amount paid into the trust fund by all employees had been re-

funded on the prior termination of services of employees.

Prior to the appointment of the receiver, Lefferdink was the sole surviving trustee — the others having resigned. He was unable to secure other trustees. The roof over the Lefferdink companies was falling in. The defendant surviving trustee elected to pay the eighty-five plaintiff-employees the sum of $22,918.90, which was due them, in ten installments pursuant to the provisions of Article VI, Section 6.02, which in pertinent part reads as follows:

"Immediately upon termination, such amounts shall be paid [the refund of contributions plus 2% interest] at the sole discretion of the Trustees, as follows:

"(1) In a lump sum, or

"(2) In equal periodic installments over a period not to exceed 10 years or such longer period as may be agreed to by the Participant, or * * *"

Pursuant to this decision, the undisputed record shows that the defendant wrote to all employees in September, 1960, stating that, as the last trustee, he was invoking Article VI of the Trust Indenture which allowed paying employees their termination moneys in ten equal payments. The first payment was made on time, September 1, 1961. The plaintiffs however refused to accept this payment and secured a court order impounding the total amount of the tendered payment in the sum of $5,546.75 (which credit was allowed in ariving at the sum of $22,918.90 admittedly owing to plaintiffs.)

It is not controverted that it was the intention of the employer companies, who created the trust, that the trustees should invest the funds contributed to the "Plan" in the companies themselves. In this connection the undisputed testimony of Lefferdink, in substance, is as follows:

The trust indenture was drawn by the Neihart Company in Indianapolis, Indiana, and it was not designed to qualify for Internal Revenue Service tax deductibility because we had in our indenture liberal provision for in-

vestment of the funds in our own company activities. One of the principal ideas was to make those investments. We did not ask for IRS qualification because one of the requirements is that you invest in certain stated securities as put out by income tax division. We specifically wanted to invest those funds in our own companies because our own companies were generating the money for the fund. All of the moneys in this fund came from our companies. We put up 5% of our employees' pay. We paid our employees and they put up 5% of the money we paid them into this fund.

Mr. Schone, an accountant who was named receiver, testified in substance that during the entire time since the inception of the Trust, the substantial investments of the Trust had been in other Lefferdink company obligations.

In September, 1960, at the time Lefferdink, as the sole surviving trustee, elected to pay refunds to the plaintiffs over a ten-year period as provided in Article VI of the Trust Indenture, the remaining assets of the Trust consisted of ten notes executed to the Trust by Allied Colorado Enterprises Company. These notes were in the total amount of $193,108.37, which included the principal amount of $185,000.00 originally owed to the Trust by Allen Enterprises Loans, Inc., one of the employer corporations. These notes were payable at the time and in the amounts as shown by the following table:

| Sept. 1, 1962 | - | $6034.62 |
|---|---|---|
| Sept. 1, 1963 | - | $5826.53 |
| Sept. 1, 1964 | - | $5618.44 |
| Sept. 1, 1965 | - | $5410.35 |
| Sept. 1, 1966 | - | $5202.26 |
| Sept. 1, 1967 | - | $4994.17 |
| Sept. 1, 1968 | - | $4786.08 |
| Sept. 1, 1969 | - | $4577.99 |
| Sept. 1, 1970 | - | $4369.90 |
| Sept. 1, 1971 | - | $146,288.03 |

It was contemplated that the first nine payments

would discharge all obligations to the plaintiffs for refund of their contributions, and that the payment due in 1971 would belong to the employer corporations.

The inter-company dealings which resulted in the trust assets as above shown are difficult to follow. It is contended that Lefferdink had no power as sole surviving trustee to accept the above notes on behalf of the trust, or to part with the consideration which was given for them, for the reason that a majority of the five authorized trustees was required to give validity to actions by the trustees. In this connection the undisputed record is that all trustees except Lefferdink had resigned; that there was a general exodus of corporate officers; that neither the defendant nor the corporation employers could appoint successor trustees to replace those who resigned. Lefferdink testified that, with the situation then existing in their business, "We couldn't get anyone to sign a letter, let alone be appointed trustee." Under these circumstances the defendant concluded that he had the duty to operate the Trust, and his undisputed testimony is that he had been so advised by counsel. He insists that all of his acts as sole surviving trustee of the Fund were performed in good faith, and were within the powers specifically granted to the trustees of the Fund.

With reference to the inter-company transactions which resulted in the exchange of some assets of the trust for the ten notes above mentioned, to which objection is made by the plaintiffs, it is sufficient to say that all of the acts of Lefferdink with relation thereto were unquestionably such as the trustees of the Fund were authorized to perform under provisions of the Trust Indenture. The liability of the defendant is claimed to arise because of the fact that, as sole trustee, he was without power to act. There is no evidence that he profited individually from any such transactions or that he converted to his own use any asset belonging to the Trust. A painstaking analysis of the entire record leads inescapably to the conclusion that the defendant, when

deserted by all other trustees, attempted to administer the Trust in a manner consistent with the express terms of the indenture and of the business policy previously established by the full board of trustees over a period of several years.

Under the circumstances of the threatened failure of a substantial number of Lefferdink enterprises and the mass withdrawal or termination of employees, there is no evidence of willful, wanton or fraudulent conduct on the part of Lefferdink warranting exemplary damages or execution against the body of defendant.

The plaintiffs asked for the appointment of a receiver, in which request the defendant joined. All assets of the Trust are in the hands of the receiver who now stands in a position to enforce payment of the above mentioned notes. If he concludes that the inter-company transactions under which the ten notes were acquired by the Trust were illegal because they were consummated by a sole surviving trustee (a point which we do not decide) he could seek to recover the assets which were exchanged for said notes. The plaintiffs sought and were granted an injunctive order under which Lefferdink was prohibited from all further acts with relation to the Trust Fund. Had no receiver been appointed it may well have been that a judgment against Lefferdink, *as trustee*, for payment of the sums admittedly payable to the plaintiffs would have been justified. We find nothing in the record warranting a judgment against Lefferdink individually.

Accordingly, the judgment against Lefferdink is reversed in its entirety, and the trial court is directed to dismiss the action as to him. The receivership should continue and the business of the Trust concluded as the receiver, with the trial court's approval, may be advised.

Mr. Justice Schauer not participating.